Again, Mr. Rubino. Good morning, Your Honors. Vincent Rubino for AGIS. May it please the Court? Go ahead. Your Honors, this next appeal is regarding another final written decision from the Patent Office. It involves a finding of obviousness that is reviewed for substantial evidence. More specifically, one of the main issues on appeal is with regard to the combination of two references, Fumarolo, along with the reference Sheeha, and whether those two references together disclose all the limitations of the claims. Essentially, the arguments on appeal boil down to whether these references together teach sending location information from a first device to second devices, second devices back to first devices. There are a whole host of other limitations for these claims, but that is really the main issue on appeal, is whether the limitation that requires a first device to send this location information is disclosed in the combination of these two references. Now, the claims relate to potentially mobile devices. They can read on things that are not mobile, but at least the independent claims can. But you have to have a device that is capable of sending and receiving location information to other devices so that you can see it on a display and interact with it. Now, sending and receiving location information is not taught by the primary reference here, the Fumarolo reference. That reference is essentially a dispatcher terminal, which one of the skills we are at reading that reference and understanding that reference knows what a dispatcher terminal is, and generally speaking, they're a fairly large machine, and in the context of Fumarolo, it describes that you can have a foot pedal and a microphone and all sorts of large apparatus. Generally speaking, they're in a fixed location, and Fumarolo describes a fixed location as one of the embodiments. A petitioner attempts to combine a reference she-hog with that disclosure to get sending location information. Why do they do that? Because in the context of Fumarolo— I'm sorry, but what about the remote terminal? You're ignoring the remote terminal 201. I mean, that is a display-based terminal, correct? Your Honor, I was not ignoring that. Apologies. I was trying to get there. But in the context of the remote terminal, if you look at what the board's finding was, the board found that it wasn't relying on the remote terminal as a separate embodiment. Google said it wasn't a separate embodiment. We dispute that, but even if you were to take that as a single embodiment with common components, the critical feature here is why do you get to combine that remote terminal with sharing location in two directions? That remote terminal still does not have location sharing, and why is that critical? Well, there is a system in Fumarolo that describes location sharing, the AVL system. The AVL system is a known protocol, and it receives information from vehicles, and it receives location information. It's not two-way, it's not bi-directional. And so how do we combine that with SHEHA? Well, if we were to combine that with SHEHA, which admittedly does disclose sharing in location information, how would we put that into the Fumarolo reference? How do we get to the combination? Well, the only way to do that—there are two ways, really, to do that. One is probably unacceptable and is not really what petitioner is going with, which would be we'd have both types of location information. That doesn't make a lot of sense. You'd have SHEHA's location sharing and the AVL system. So the only thing that makes sense would be to swap the AVL system with the location sharing of SHEHA, because that's the hook they get to in their expert desperate— But doesn't the AVL system in Fumarolo, isn't it indirectly integrated with the remote terminal? Yes, Your Honor, and that's the issue, the indirect connection. And what is the significance of the difference between indirect coupling versus the direct coupling in a fixed terminal? That is exactly the point, and that is exactly the critical difference, which is that if you look at the figures that were excerpted by the board, the AVL system, which is the hook for location sharing, is not directly connected to the remote terminal. Right. My question is, what's the significance of that? Because you say that repeatedly in your brief, but you never really clarify why that matters. Your Honor, if you're going to get location information from that remote terminal through that AVL system, you're only going to be getting the location of the fixed unit, because the way that Fumarolo describes the remote terminal is with some components remote, still dummy terminal, ex-Windows session, which would mean that the location would still be the location of the fixed terminal. There's a fixed terminal running all of the components, running the AVL system. If we swap location sharing for that AVL system, we are still getting the location of the fixed terminal, not of the remote van driving around with the remote component. It just doesn't get you the two-way location sharing of that unit where you have your display. What about column 5, I think it's around 13 to 21, and it talks about the remote terminal receiving communication unit location updates from the AVL system? Yes, Your Honor. That is still receiving the location updates from the AVL system, but if we are turning the AVL system into a two-way bi-directional system, that system is still only connected in the box in the figure to the base unit that is a fixed unit. It is not connected to the remote unit. There may be some information sharing that goes over a separate wireless link to the remote terminal, but there is nothing in the record that would explain why you would take an AVL system and then make it two-directional, and then add yet another component which would get location of another remote unit, send that back to the AVL unit. That's the disconnect, is that the AVL unit isn't connected directly. It may have a wireless communication to it, but it's not directly connected to that remote terminal, and therefore, there's no motivation to get the location of that remote terminal that we're still stuck with, location information of a fixed terminal. Maybe I'm just thick here, but if a remote terminal can receive location information, why couldn't one of Skillny Art modify the remote terminal to send location information? Your Honor, the information being received by that remote terminal in the context of Fumarolo is in the context of primarily the dummy terminal embodiment, which is that it's going to be receiving screen information, and that the processing and the computations are all going to be done remotely at the fixed location. Additionally, there's just nothing in that remote terminal that would be able to generate your location information. If all of the hardware itself, other than the GUI, is located back at the base terminal, where is the hook to get the location information? We have to add a GPS or something. There's just no disclosure of that type of integration into the remote terminal. If we look back at the EMVL system, it's only the... Does figure two show that the remote terminal has a processor component? Figure two does show it has a processor component, as a dummy terminal would be. It would need user input device, transceiver, some memory, and a GUI, but it still discloses that it has an X-window session linked back to a base terminal. If it was merely the case that the AVL system was in communication with the processor of the remote terminal, the figure would be drawn with the AVL system hooked into the remote terminal, and that's just not taught by the reference. There is disclosure of the wireless embodiment, but it is not taught by the reference that the AVL system is present in the remote terminal. Okay. If I may proceed on to one other point from our brief, if the panel does not have any additional questions on that limitation. Go ahead. So, for the remainder of the petition, there is one additional argument that we raised, which is that limitation 1.7, that there's just no argument by the board about how you would get to that obviousness determination, other than conclusory statements about a design choice. And that is a very simple question of law, which is, is it possible to have a design choice for something that is functional? So, design choice is generally limited to things like, could I have a blue or a yellow or a red? Those are the choices. Well, picking blue would be a design choice. Did you actually argue below that there's no motivation to combine with CHIHA? Your Honor, we did argue below at great length about the disclosure of CHIHA with regard to, at least in the context of the second device and the first device, and the limitation following this limitation, which is based on the user input adding the user-specified symbol, that there is no user-specified symbol in the context of those two references. Did we need to say no user-specified symbol and then cite to in the breakdown that the board had of 1.7 versus 1.8? I don't think the forfeiture rules are that strict. The argument was made that the two references should not be combined. And that was on page, I believe it was on page 12 of our responsive brief, sorry, of our patent order response, which I can get the record site for during my rebuttal time. But yes, we did make the argument that the user-specified symbol was not taught in the combination, at least in the context of the next limitation. And that was clearly an issue in the response, and the board still had the duty of making that determination for petitioner and showing that motivation to make those changes in the context of the two references. And there's just not, there's nothing in the record to support that, to support the combination for a design choice. And the reason why, if I may just continue for 15 more seconds. Go ahead. And the reason why that's important is because this limitation is about choosing a symbol, selecting a symbol. The function of a choice is not a design choice. That is functional, that is part of the program, that is not whether to make it pink, red, or blue, or whether to make the symbol a car, a vehicle, or a fire hydrant, or a fire station. That is to have the actual functionality in the claims. There's just nothing in the case law for design choice that would support the decision to add new functionality as a design choice. And there's nothing in the expert declaration to explain why that would happen either, nothing in the petition, nothing more than the bare conclusion in the final written decision. And for that reason, Your Honors, I just would submit that there is no substantial evidence of that limitation. Okay. Thank you, Mr. Rubino. Mr. Garcia? Thank you, and may it please the Court. In this appeal, Your Honors, the Board's fundamental finding is that both of the terminals in Fumarolo perform the same functions and share every relevant component. That's on pages 29 and 30. That finding is supported by the references figures, which show that they share every as well as expert testimony, showing that they, in fact, perform the same communication and mapping functions. The contrary argument has never had any answer for the actual figures themselves or the statements in Column 5. And as the Board held, the only distinction is that the 201 terminal gathers the AVL information through wirelessly instead of with a wire. So that is supported by fundamental substantial evidence, and essentially all of AGIS's arguments fall with that finding. Today, AGIS addressed primarily two other arguments that it had abandoned in the reply brief. I'm happy to address any questions about those issues. I don't know that a failure to address arguments in a reply brief necessarily means they've abandoned them. So why don't you address the merits of the other arguments? Sure, and I'll take them in reverse order, Your Honor. So the limitation 1.7, where AGIS's counsel ended, that is unequivocally waived. They did not address limitation 1.7 below for Google's arguments on that limitation. As for the motivation to combine Fumarolo with SHEHA, the fundamental point on that is essentially where I started. The premise of their argument is that there's some vast distinction between the display-based terminal 101 and display-based terminal 201, and that's simply contrary to the explicit statements in the reference, and when you have the remote terminal that is capable of performing the mapping and communication functions and is mobile, that is just further support for the Board's finding on pages 65 to 68 that there would be a motivation to combine Fumarolo and SHEHA to achieve the two-way location sharing. Can you answer the question that I asked Mr. Rubino, Mrs. Judge O'Malley? Is there a significance to the direct coupling versus indirect coupling? No, Your Honor. That is entirely just about the manner in which the terminal gets the AVL location, whether it's with a wire or wirelessly. That's the only distinction, and it has no functional impact, and that's what the Board held and what we believe is not just supported, it's unambiguous, that the terminal itself in both Figures 1 and Figures 2 perform every function in exactly the same way. So, one of skill in the art would not have understood, for instance, that GUI, or GUI as Mr. Rubino calls it, to perform certain functions in the fixed terminal and different functions in the remote terminal? That's correct, Your Honor, and I think that's clear both from Figures 1 and Figure 2, which both refer to GUI 119. There's no indication there's a difference. And then when we turn to Column 5, Column 5 makes clear that in Figures 3 and 4, which is illustrating the maps, the interactive maps, that they apply to both Terminal 101 and 201. That's lines 23 and 24 in Column 5. And there's simply no basis for the suggestion that anything that the terminals do about processing information, displaying information, and facilitating communications with the communication units is different at all. And again, in Column 5, it explicitly shows that the mapping functions are the same. A little bit higher up in the column, it states that both terminals communicate with the communication units in a similar way. And there's simply, at the very least, there is substantial evidence for the Board's finding that the only distinction between the two terminals is the wired versus wireless connection, and that that has no relevance in terms of the obvious analysis that Google put forth. Okay, anything further? I would be happy to rest on our briefs on the argument today if the panel does not have further questions. Okay, hearing no further questions, thank you, Mr. Garcia. Mr. Rubino, you have a couple of minutes. Thank you, Your Honors. As indicated in my opening session, with regard to support for the limitation of user-specified symbol, there is support for discussion of that symbol. And as Google admits, it is within the context of the second device that we do have that discussion, but it is essentially the same limitation with antecedent basis in limitation 1.7 as it is in 1.8. Whether it's in the second device or the first device, it's the same combination that Google is trying to make. And we have that discussion about no motivation to combine and a lack of that feature. It's on Appendix 368 through 369, at least at those pages. With regard to the AVL system and the fixed versus non-fixed terminal and the direct versus indirect connection, the point isn't about whether there could be communication between systems wirelessly, about whether one of skill in the art could communicate between the remote terminal and then the base terminal in the remote embodiment. The issue is, where do you put the location-sharing capability? It can go in one of two places. Either it can go in the remote terminal itself, where you're getting location of that remote terminal, or it would be back in the home base. So what does Fumarolo teach? Fumarolo teaches an AVL system. Google's motivation to combine is to change that AVL system into a different kind of system. The box for AVL always resides in a fixed location. So if we're taking that system and turning it into a two-way system, we are still getting locations of that box. That box is with a fixed terminal and one embodiment, and then not with the remote terminal, a second embodiment. Sure, it can communicate, but where are you getting the location? Okay. Thank you, Mr. Rubino, unless there are further questions. Hearing none, I thank both counsel. The case is submitted.